JAMES M. CLARK, Defendant in Error, *vs.* STANLEY JANKOWSKI, Plaintiff in Error.

*Opinion filed June 21, 1912—Rehearing denied October 2, 1912.*

1. PLEADING—*allegations and proof must correspond.* A defendant in equity cannot avail himself of defenses appearing from the evidence which are not presented by the pleadings.

2. SPECIFIC PERFORMANCE—*only parties to the contract are necessary parties to the suit.* The doctrine that all parties interested in the subject matter of the litigation must be made parties, either as complainants or defendants, does not apply to suits for specific performance of contracts, the general rule being, as to such suits, that no persons are necessary parties except those to the contract.

3. SAME—*decree cannot release dower of wife not signing a contract.* A court cannot decree the release of a wife's dower in a suit against the husband for specific performance of a contract, not signed by the wife, to convey real estate.

4. SAME—*extent of decree when wife does not sign contract.* The fact that the wife has not signed a contract for the conveyance of real estate, so as to thereby agree to release her dower, is no reason, in law, why such contract may not be enforced against the husband, but in such case the complainant must take a decree against him alone and rely upon his covenants.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

W. A. PANNECK, and DUNNE, MCKEEVER & DUNNE, for plaintiff in error.

255 — 9

LIVINGSTON & BACH, and ALFRED LIVINGSTON, (SIG-
MUND LIVINGSTON, of counsel,) for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of
Cook county by James M. Clark, the defendant in error,
against Stanley Jankowski, the plaintiff in error, to enforce
the specific performance of a certain contract in writing en-
tered into by said Clark and Jankowski for the exchange
of real estate. An answer and replication were filed and
the cause was referred to a master to take the proofs and
report his conclusions as to the law and the facts, and the
master having taken the evidence of the respective parties,
filed a report in which he recommended the entry of a de-
cree in accordance with the prayer of the bill, and the chan-
cellor, after having overruled exceptions filed by the de-
fendant to the master's report, entered a decree according
to the recommendations of the master, and the defendant
has sued out this writ of error to reverse said decree.

It appears from the pleadings, evidence and master's
report that on the 18th day of September, 1909, complain-
ant was the owner of two farms situated in Lee county,
one of which contained 160 and the other 320 acres; that
the defendant was the owner of a flat-building situated
upon Leland avenue, in the city of Chicago; that on that
day the parties entered into a contract in writing, whereby
the complainant agreed to exchange said farms at a valu-
ation of $72,000, subject to a mortgage indebtedness of
$25,000 and a drainage tax of $5000, for the defendant's
flat-building at a valuation of $40,000, and to allow the
defendant a rebate of $1600 on the price of said farms for
land taken for right of way for drainage ditches and over-
flow and swamp lands; that abstracts of title were to be
furnished by the parties to each other for their respective
properties, and the exchange was to be consummated on
the first day of March, 1910, by the delivery of deeds; that

the complainant furnished an abstract of title to each of his farms to the defendant showing title in himself, and on March 1, 1910, tendered to the defendant warranty deeds for said farms and demanded a deed from the defendant for said flat-building signed by himself and wife, in accordance with the terms of the contract theretofore entered into between the parties; that the defendant declined to carry out said contract by accepting deeds from the complainant for said farms and by executing a deed to the complainant for the said flat-building, for the reason, as averred by him in his answer, that the complainant had falsely represented to said defendant, for the purpose of inducing him to sign the alleged contract, that the eastern boundary line of said 320-acre tract was the new channel of Green river, when, as a matter of fact, as the complainant well knew, 40 acres of said 320-acre tract were situated on the east side of the new channel of Green river, and were low and swampy and covered by willows, and were unfit for farming purposes and of but little value.

The main question in controversy between the parties is one of fact, and is, did the complainant, at the time the 320-acre tract was examined by the defendant with a view of making said exchange, mislead and deceive the defendant as to the location of the east boundary line of said 320-acre tract, by representing to the defendant that the entire tract was on the west side of the new channel of Green river, when, as a matter of fact, a portion of said tract was situated upon the east side of said new channel?

The 320-acre tract is low, level land, and the south-east corner thereof is crossed by the old channel of Green river, about 4½ acres of said tract being severed by the old channel from the main tract. The 320-acre tract is in a drainage district, and for the purpose of drainage a new channel has been made for Green river, which is situated west of the old channel and severs from the main tract 29 acres, which 29-acre tract is triangular in shape and is situated

in the south-east corner of the 320-acre tract. Of said tri-angular-shaped tract 24½ acres lie between the old and new channels of Green river. A public highway is located upon the south line of said 320-acre tract, both channels of Green river being bridged where the said channels are crossed by said highway. At the time the defendant and complainant visited the 320-acre tract, in September, 1909, with a view of making said exchange, they were accompanied by E. R. Mickelberry, who was interested with the complainant in said farms, and August J. Keithahn, a real estate agent who lived in Walnut, a village situated about four miles from said farms and who had had charge of said farms for some time prior to that date. Upon arriving at the farms the defendant, in company with one or more of the parties, went over the 320-acre tract and finally arrived at the new channel of Green river, situated near the eastern boundary of that tract, and which was some seventy feet in width, and they followed the channel down its west bank until they came to the highway bridge on the south line of the farm. Upon reaching the highway the parties went upon the bridge, and after viewing the land from the bridge crossed the new channel and followed the highway east some distance, but just how far is in dispute. Corn was growing upon the land adjoining the east bank of the new channel, and the defendant testified that he was informed by the parties that 12 acres of the farm were situated on the east side of the new channel and were in corn, and that he was shown a post on the east line of said 12-acre tract by the complainant and informed that post was on the east line of the 320-acre tract. His testimony in this regard was contradicted by the complainant and by Mickelberry, both of whom testified that while on the east side of the new channel they pointed out to the defendant the true location of the east line of the 320-acre tract, and their statement in this regard was corroborated by Keithahn. After the parties had examined the farms they re-

turned to the city of LaSalle, where the contract which forms the basis of this suit was prepared by the attorney of the defendant and was signed by the complainant and defendant. After the contract was executed the defendant rented the 320-acre tract to Frank Anderson for one year, commencing March 1, 1910, and Anderson took possession of said tract under said lease and was in possession of the same at the time this bill was filed. Anderson testified that when he was ready to go out to examine the land with a view of renting the same, the defendant informed him that part of the 320-acre tract was east of the new channel, and was wet, low land and was covered by willows. When the contract was drawn a rebate of $1600 was allowed the defendant from the price of the farms for drainage ditches and overflow lands, which would amount to over ten acres at $150 per acre, and according to the evidence was as much of the land as was ordinarily not susceptible of cultivation. The defendant at the time of the execution of the contract was about fifty years of age, owned several farms and other tracts of real estate, and was an experienced business man.

We think, when all the evidence is considered, that the court below properly held that no fraud or deception was practiced upon the defendant as to the true location of the east line of the 320-acre tract, and that at the time he executed the contract he was fully aware of the fact that a portion of said tract was situated east of the new channel of Green river, and that it was low, swampy land, overgrown by willows. Furthermore, the defendant averred in his answer that he was informed by the complainant that the true boundary line of said 320-acre tract upon the east was the new channel of Green river, while he testified that the boundary line shown him by the complainant was a post situated some distance east of the new channel. It is clear that the defendant's testimony does not sustain the averments of his answer, and the law is well settled that

the allegations and the proofs must correspond, and that a defendant in equity cannot avail himself of defenses appearing from the evidence which are not presented by the pleadings. (*Jewett* v. *Sweet,* 178 Ill. 96.) We conclude, therefore, that the court did not err in entering a decree against the defendant for the specific performance of said contract.

The evidence shows that E. R. Mickelberry was interested in the sale of said farms and in case the contract was carried out which was entered into between the complainant and defendant and a profit was made upon the farms he would share in said profit, and it is urged by the defendant that Mickelberry should have been made a party to the bill. The legal title to the farms at the time the contract was entered into was in the complainant and the contract was executed by the complainant and defendant. The doctrine that all parties interested in the subject matter of the litigation must be made parties, either as complainants or defendants, does not apply to suits for the specific performance of contracts, the general rule being, as to such suits, that no persons are necessary parties except those to the contract. (*Deniston* v. *Hoagland,* 67 Ill. 265; *Washburn & Moen Manf. Co.* v. *Wire Fence Co.* 109 id. 71; *Burton* v. *Perry,* 146 id. 71; *State Nat. Bank* v. *United States Life Ins. Co.* 238 id. 148.) In the *Washburn & Moen Manf. Co. case,* on page 85, this court said: "The general rule is, that to a bill for the specific performance of a contract no persons are necessary parties except the parties to the contract itself. (Fry on Specific Per. sec. 79; Pomeroy on Contracts, sec. 483, and cases cited; *Willard* v. *Taylor,* 8 Wall. 557.) Mr. Pomeroy says this is the well settled general doctrine in England and has been followed by some of the American decisions, though the tendency of the later decisions is towards the adoption of a more comprehensive rule. In section 492 he lays it down that, in general, when the vendor is a trustee his *cestuis que*

*trust* need not be joined as co-defendants." In *State Nat. Bank* v. *United States Life Ins. Co. supra,* on page 158, it was said: "The general doctrine that all parties having an interest in the subject matter of the litigation must be made parties does not have full application to suits for specific performance of contracts, the general rule being, that to such a bill no persons are necessary parties except the parties to the contract itself." And in *Burton* v. *Perry, supra,* on page 103, it was said: "In case of a common bill for the specific performance of a contract of sale of real estate, the only proper parties, in general, are the parties to the contract itself." We are of the opinion Mickelberry was not a necessary party to this bill.

The defendant was married, but his wife, Mary Jankowski, did not sign the contract nor was she made a party to this suit. The contract provided the defendant should convey to the complainant said flat-building by warranty deed, signed by himself and by his wife, and the decree directed that the defendant should execute said contract by conveying said flat-building to the complainant by good and sufficient deed, "and that said deed of conveyance be a warranty deed, as provided by said contract, executed according to law by said defendant and his wife, Mary Jankowski, and delivered to the said master in chancery for proper delivery to the said complainant within ten days from this date, and upon failure so to do the said master in chancery shall execute and deliver to the complainant a proper deed of conveyance of said premises." The decree, in so far as it directed the defendant to procure a release of his wife's dower in said flat-building and to convey said flat-building freed of her dower, is erroneous. (*Humphrey* v. *Clement,* 44 Ill. 299; *Litsey* v. *Whittemore,* 111 id. 267; *Watson* v. *Doyle,* 130 id. 415; *Ebert* v. *Arends,* 190 id. 221.) The fact that the wife had not signed the contract and thereby agreed to release her dower in said flat-building is no reason, in law, why the contract may not be specifically

enforced as against the defendant, but the court could not decree a release of the wife's dower in the premises, and if the complainant desires a decree for the specific performance of the contract he must take a decree against the defendant alone and rely upon the covenants of the defendant.

The decree, in so far as it directs the defendant to deliver a deed to said flat-building or the master in chancery to execute a deed of said flat-building in which Mary Jankowski has joined, is hereby modified by striking out from said decree all reference to the dower of Mary Jankowski in and to the premises upon which said flat-building stands, and in all other respects the decree will be affirmed.

*Decree modified and affirmed.*